UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 07-165-GWU

SAMMY R. KELLY,                                                    PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                          DEFENDANT.

## INTRODUCTION

Sammy Kelly brought this action to obtain judicial review of an unfavorable administrative decision on his application for Disability Insurance Benefits and for Supplemental Security Income.  The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1.    Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled.  If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities?  If yes, proceed to

1

07-165  Sammy R. Kelly

Step 4.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.     Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months?  If yes, proceed to Step 5.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.     Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.  <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.     Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.     Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

2

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  <u>Garner</u>, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

to afford or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  <u>Id.</u> at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  <u>E.g.,</u> <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

07-165  Sammy R. Kelly

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist.

6

Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

### DISCUSSION

The Administrative Law Judge (ALJ) concluded that Kelly, a 38-year-old former security officer, assembler and maintenance man with a high school education, suffered from impairments related to obesity, diabetes mellitus, sleep apnea, hypertension and a dysthymic disorder.  (Tr. 24-25).  Despite the plaintiff's impairments, the ALJ determined that he retained the residual functional capacity to perform a restricted range of medium level work.  (Tr. 26-27).  Since the claimant was found able to return to his past relevant work, as well as a significant number of other jobs in the national economy, he could not be considered totally disabled. (Tr. 31).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

In determining that Kelly could return to his past relevant work, the ALJ relied heavily upon the testimony of Vocational Expert Betty Hale.  The hypothetical question presented to Hale included an exertional limitation to medium level work,

along with such non-exertional restrictions as (1) an inability to ever climb ladders, ropes or scaffolds; (2) an inability to more than occasionally climb stairs or ramps, crouch, crawl and stoop; (3) a need to avoid concentrated exposure to dust, fumes, odors, chemicals, gases, dangerous or moving machinery, and commercial vehicles; (4) a "fair" ability to interact with supervisors, to relate predictably in social situations or demonstrate reliability; and (5) a "fair to poor" ability to deal with work stresses.  (Tr. 801-802).  In response, Hale testified that Kelly's past work could still be performed.  (Tr. 803).  As an alternative, the witness also identified a significant number of jobs in the national economy which could still be done as well.  (Tr. 803-804).  Therefore, assuming that the vocational factors considered by Hale fairly depicted the plaintiff's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to the framing of the physical factors of the hypothetical question, the undersigned finds no error.  The ALJ relied upon the physical restrictions identified by Dr. Robert Marshall.  (Tr. 614-617).  Dr. Marshall reviewed the record and completed interrogatories for the physical restrictions he thought were appropriate as well as identifying the medical evidence supporting his opinion. The administrative findings were also consistent with the opinions of Dr. Sudideb Mukherjee (Tr. 386-394) and Dr. Calixto Hernandez (Tr. 395-400), the non-examining medical reviewers.  More severe physical restrictions than those found by the ALJ were not cited by such treating and examining sources as the staff at

8

Appalachian Regional Healthcare (Tr. 226-240, 253-272, 275-313, 496-551, 601-604), the staff at Central Baptist Hospital (Tr. 241-249, 437-493), the staff at St. Joseph Hospital (Tr. 250-252, 394-395), and the staff at the Mountain Heart Center (Tr. 273-274).   These reports provide substantial evidence to support the administrative decision.

Dr. Gregory Dye, a treating source, identified the existence of very severe physical restrictions and further opined that Kelly could not engage in substantial gainful employment.  (Tr. 555-557).  The extremely severe restrictions reported by Dr. Dye included an inability to lift more than a third of a pound on a frequent basis. (Tr. 555).   The ALJ rejected Dr. Dye's opinion as binding because it was contradicted by other evidence in the record and not well-supported by objective medical data.  (Tr. 27).  This action was appropriate.  Dr. Dye restricted Kelly to lifting no more than one-third of a pound but the plaintiff testified that he could lift 10 to 15 pounds.  (Tr. 758).  Dr. Dye based his limitations upon a reduced range of lumbar spine motion (Tr. 555) but the ALJ noted that other sources did not support this finding (Tr. 27).  As previously noted, the ALJ instead relied upon the opinion of Dr. Marshall, the medical advisor.  An ALJ may rely upon the opinion of a non-examiner over that of an examining source when the non-examiner clearly states the reasons for his differing opinion.  Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994).  In the present action, Dr. Marshall extensively reviewed the record and cited numerous reasons why he did not believe that the opinion of Dr. Dye was well-

supported.  (Tr. 605-613).  Dr. Marshall noted that the medical evidence did not reveal significant coronary artery disease (Tr. 605) with a recent catheterization study at Appalachian Regional Healthcare showing only mild irregularities (Tr. 601). The claimant's hypertension was noted to have been well-controlled in the record. (Tr. 605).  Therefore, the ALJ could reasonably rely upon Dr. Marshall over Dr. Dye.

Kelly asserts that the ALJ failed to properly consider his problem with sleep apnea.  The plaintiff notes that he has lost his driver's license as a result of this problem.  (Tr. 199).  However, the hypothetical question did include restrictions concerning exposure to dangerous or moving machinery as well as a limitation concerning the operation of commercial vehicles.  While Dr. Dye indicated that the claimant was totally disabled as a result of his "general physical condition" he did not attribute his specific restrictions to sleep apnea.  (Tr. 555-557).  Therefore, the court finds no error.[1]

Kelly also asserts that the ALJ erred in failing to consider his problems with carpal tunnel syndrome as a "severe" impairment.  As noted by the defendant, the plaintiff alleged a disability onset date of October 22, 2002.  (Tr. 89).  The medical

---

[1]The plaintiff's obesity was specifically considered by Dr. Marshall in making his residual functional capacity assessment as the plaintiff admits in his brief.  Docket Entry No. 11, p. 8.  Dr. Marshall also specifically limited some of the claimant's activities because of his obesity.  (Tr. 610, 615).  Thus, the extent that the plaintiff may be arguing that his obesity alone, as opposed to his sleep apnea, was not properly considered, taking into account Social Security Ruling 02-1p, his argument is without merit, since his body habitus was certainly considered in the determination of his residual functional capacity.

record indicates complaints of arm pain going back to 1996.  (Tr. 216).  In August of 2002, well before the alleged onset date, Dr. Roger McSharry reported a history of carpal tunnel syndrome with surgical release of both hands.  (Tr. 327).  Physical examination of the claimant's extremities at this time revealed no abnormalities.  (Tr. 328).  During the relevant time period, Dr. Dye did not relate any of his extensive physical restrictions to carpal tunnel syndrome.  (Tr. 555-557).  Dr. Marshall also did not note this condition to be a problem for the plaintiff.  (Tr 605-617).  Therefore, the undersigned finds no error.

With regard to the framing of the mental factors of the hypothetical question, the undersigned also finds no error.  The mental factors presented to the vocational expert were consistent with the mental restrictions identified by Psychologist Robert Fitz, an examining consultant.  (Tr. 593-594).  Fitz diagnosed a dysthymic disorder after completing an examination of the plaintiff and a review of treatment records from the Cumberland River Comprehensive Care Center and Psychologist Reba Moore, another examiner.  (Tr. 584-592).  The examiner rated the claimant's Global Assessment of Functioning (GAF) at 62 (Tr. 591), suggesting the existence of only "mild" psychological symptoms, according to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34.  More severe, specific mental limitations were not reported by the staff at Cumberland River, the treating source.  (Tr. 368-385, 552-553, 558-569, 580-583).  A GAF of 65 was noted in May of 2004, indicating the existence of only "mild"

11

psychological symptoms, compatible with the ALJ's findings.  Psychologist Edward Ross opined that the plaintiff would be "moderately limited" in acting within a schedule and interacting with the general public (Tr. 400-401) and Edward Stodola added a limitation concerning maintaining attention and concentration (Tr. 404-405). The somewhat differently worded mental restrictions of the hypothetical question were essentially consistent with these opinions.  These reports provide substantial evidence to support the administrative decision.

Psychologist Reba Moore examined Kelly and reported the existence of far more severe mental restrictions than those found by the ALJ.  (Tr. 578-579).  The ALJ rejected Moore's opinion in favor of that of Fitz.  (Tr. 27-28).  This action would appear appropriate since each was a one-time examiner and Fitz had the opportunity to review treatment notes from Cumberland River as well as Moore's report.  Therefore, the ALJ dealt properly with the evidence of record relating to the plaintiff's mental condition.

The court notes that Kelly submitted several additional medical records directly to the Appeals Council which were never seen by the ALJ.  This action is an issue concerning a remand for the taking of new evidence before the Commissioner.  Cotton v. Sullivan, 2 F.3d 692 (6th Cir. 1993).

A court may order additional evidence be taken before the Commissioner, " . . . but only upon a showing that there is new evidence to be taken which is material and there is good cause for the failure to incorporate such evidence into

the record in a prior proceeding . . . ." 42 U.S.C. § 405(g).  The statute provides that a claimant must prove that the additional evidence is both material and that good cause existed for its not having been submitted at an earlier proceeding.  Sizemore v. Secretary of Health and Human Services, 865 F.2d 709, 710 (6th Cir. 1988).  In order to demonstrate "materiality," a claimant must show that a reasonable probability exists that the Commissioner would have reached a different conclusion if originally presented with the new evidence.  Sizemore, 865 F.2d at 711.  Thus, the new evidence must be material and good cause must be shown why it was not previously submitted.

The medical records with which Kelly seeks a remand of the action include a hospitalization report from the Baptist Regional Medical Center dated October of 1996 (Tr. 635-646), treatment notes from the staff at Appalachian Regional Healthcare dated from January of 2003 through January 2005 (Tr. 647-707), hospitalization reports from St. Joseph Hospital dated from September and October of 2001 (Tr. 708-712), treatment notes from the staff of Cumberland River dated between July, 2004 and May, 2005 (Tr. 713-727), and treatment notes from Dr. Dye dated between March of 2004 and May of 2005 (Tr. 728-736).  The plaintiff has offered no explanation as to why such or similar evidence was not obtained prior to the issuance of the ALJ 's final decision on April 2005.  While some of the records were not in existence at the time of this decision, such, by itself, does not satisfy the good cause test and a valid reason for failure to obtain the evidence must still be

13

07-165  Sammy R. Kelly

shown.  Oliver v. Secretary of Health and Human Services, 804 F.2d 964, 966 (6th Cir. 1986).  This additional evidence does not identify functional restrictions which would relate to the pertinent time frame.  Therefore, the claimant has failed to meet either the "good cause" or "materiality" requirements and, so, a remand for the taking of new evidence is not appropriate.

After a review of the evidence presented, the undersigned concludes that the administrative decision should be affirmed.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 4th day of June, 2008.

**Signed By:**

_G. Wix Unthank_

**United States Senior Judge**

14